**STATE of Missouri, Respondent,**

v.

**Robert L. HASLAR, Appellant.**

**No. WD 48446.**

Missouri Court of Appeals,
Western District.

Sept. 6, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1994.

Application to Transfer Denied
Dec. 20, 1994.

Roy W. Brown, Kearney, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and
BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Robert L. Haslar appeals his conviction for class C felony burglary in the second degree, § 569.170, RSMo 1986[1], for which he was sentenced to seven years' imprisonment. Mr. Haslar raises three points on appeal, claiming that the trial court erred in (1) overruling his post-trial motion for judgment of acquittal, (2) refusing to instruct the jury on the lesser-included offense of trespass in the first degree, and (3) sustaining the State's motion in limine regarding the admissibility of evidence of his mental condition. The judgment is affirmed.

The facts are viewed in the light most favorable to the verdict. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). In July of 1992, Bonnie Hubbard lived next door to Nancy Lynch. On the night of July 9, 1992, Ms. Hubbard observed Mr. Haslar park his truck in front of Ms. Lynch's duplex and leave the engine running. Ms. Hubbard recognized Mr. Haslar because she had seen him at the duplex with Ms. Lynch in the past. Mr. Haslar went to the front door of Ms. Lynch's duplex and knocked, but after no one answered, he drove around to the back of the duplex. Ms. Hubbard observed him kick in the back door of Ms. Lynch's duplex and go upstairs. She was able to see him because the back light and basement lights of the duplex were illuminated and there were no curtains in the window. Ms. Hubbard then called the police. She continued to watch Mr. Haslar, though, who stayed in the house two to three minutes before he left carrying a small, square object in his hand. The police arrived after Mr. Haslar left, but Ms. Hubbard told them that it was Mr. Haslar whom she observed entering and exiting the duplex that night.

Officer David Shumacker responded to the call of a "burglary in progress" at Ms. Lynch's duplex. He had been informed prior to reaching the scene that "the party that was supposed to be breaking in had already gone," so when he arrived at approximately 10:15 p.m., the officer immediately contacted Ms. Hubbard and her husband. Officer Shumacker then went to Ms. Lynch's duplex where he found the back door standing open and the door frame broken in three to four different places. Ms. Lynch returned home twenty minutes after the police arrived. She

---

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

and Officer Shumacker went through the residence together to see what was missing. The officer observed a telephone lying in the middle of the stairway. Ms. Lynch testified at trial that the back door had been kicked in, the television screen was broken, the telephone was ripped out of the wall, and the lid to the answering machine was on the floor. At the time of the break-in, Ms. Lynch told Officer Shumacker that at that time she could not be sure of what was missing, but she verified with the police officer the next day that the answering machine and her food stamps were gone. The amount of these items together was over one hundred fifty dollars, and the property was never recovered.

Ms. Lynch testified that Mr. Haslar was the father of her seven-year-old daughter. She had no contact with him from the time her daughter was nine months old until two to three months prior to the burglary when they began to date again. Shortly before this incident, Ms. Lynch had obtained an order of protection against Mr. Haslar for assaulting her and she had not seen him for three to four weeks. She had not given him permission to enter her home nor take any item from her home on July 9, 1992.

Mr. Haslar was charged with the class C felony of burglary in the second degree and the class C felony of stealing. When arraigned on August 27, 1992, Mr. Haslar entered a plea of not guilty. At arraignment, Mr. Haslar apparently made an oral request for a mental examination and the trial court sustained the request. The report from the psychiatric examination was dated January 19, 1993. At the time the report was prepared, Mr. Haslar was "under the supervision of the Department of Mental Health, having been found Not Guilty by Reason of Mental Disease or Defect in 1989." The findings of the physician conducting the examination are as follows:

1. Mr. Haslar does not have a mental disease or defect within the meaning of Chapter 552, RSMo.

2. Mr. Haslar does not lack capacity to understand the proceedings against him or to assist in his own defense.

3. At the time of the alleged offense Mr. Haslar did not suffer from any mental disease or defect which would have impaired his ability to conform his conduct to the requirements of the law or impaired his ability to know and appreciate the nature, quality, or wrongfulness of the alleged conduct.

4. Mr. Haslar does not require hospitalization.

Prior to trial, the State submitted a motion in limine requesting that Mr. Haslar's counsel be prevented from mentioning any evidence concerning Mr. Haslar's mental condition. The court sustained the State's motion in limine. The defendant's motions to dismiss submitted at the end of the State's evidence and at the close of all of the evidence were overruled at trial. The jury returned a verdict of guilty on the charge of class C felony burglary in the second degree and not guilty on the charge of class C felony stealing. The court found Mr. Haslar to be a persistent offender and sentenced him to seven years' imprisonment. Mr. Haslar timely filed a notice of appeal.

I.

As his first point on appeal, Mr. Haslar asserts that the trial court erred in overruling his post-trial motion for judgment of acquittal because by finding Mr. Haslar guilty of burglary and not guilty of stealing, the jury failed to find the intent element of burglary. Mr. Haslar also argues that the evidence was insufficient as to the intent element to find him guilty of burglary. Mr. Haslar contends that under the State's theory of guilt the "intent to steal" element of burglary was dependent on the specific act of stealing the items listed under the stealing charge. Therefore, he claims that the jury's verdict of guilty on the burglary charge and not guilty on the stealing charge resulted in inconsistent verdicts because the jury could not rationally infer the "intent to steal." In the alternative, Mr. Haslar submits that the unique facts of this case combined with the acquittal on the stealing charge reveal an insufficiency of the evidence as to the intent element of the burglary charge.

### A. Inconsistent Verdicts

■ This court's focus in determining whether two verdicts are inconsistent is to ascertain "whether the offense of which the defendant was found not guilty requires proof of an element unique to that crime and distinct from the elements of the offense of which defendant was found guilty." *State v. Dominique*, 619 S.W.2d 782, 785 (Mo.App. 1981). Burglary in the second degree is committed when the defendant "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Section 569.170. The jury instruction for burglary provided that Mr. Haslar would be found guilty of burglary in the second degree if he "knowingly entered unlawfully in an inhabitable structure located at [Ms. Lynch's address] and possessed by Nancy A. Lynch" and did so "for the purpose of committing the crime of stealing therein." *See* MAI–CR3D 323.54.

A person commits the crime of stealing by "appropriat[ing] property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." Section 570.030. Stealing is a class C felony if the value of the property appropriated is equal to or greater than one hundred fifty dollars. Section 570.030.3(1). Under the jury instruction for the class C felony of stealing, in order to find Mr. Haslar guilty of stealing, the jury had to find that he "took a Phone Mate answering machine and miscellaneous food stamps owned by Nancy Lynch," that he did so "without the consent of Nancy Lynch," that he did so "for the purpose of withholding it from the owner permanently," and that "the property so taken had a combined value of at least one hundred fifty dollars." *See* MAI–CR3D 324.02.1.

It is self-evident that second-degree burglary and stealing involve different elements and that neither of these crimes is dependent on the other. *Dominique*, 619 S.W.2d at 785. Stealing requires proof of a defendant's appropriation of the property or services of another. Section 570.030. Burglary requires only proof that the defendant entered a building or inhabitable structure *for the purpose* of committing a crime, in this case stealing. Section 569.170. Consummation of the intended crime of stealing "is not essential to establishing that the intruder entered the building with the necessary intent to sustain the burglary charge." *State v. Jones*, 863 S.W.2d 353, 358 (Mo.App.1993). In that respect, stealing necessarily involves an element not required for a conviction of burglary. This court cannot, therefore, say that the jury verdicts were inconsistent, for the jury could have found that Mr. Haslar entered the duplex for the purpose of stealing but that he did not consummate the crime of stealing, he did not take the specific items listed in the stealing instruction, or that he did not take items with a value of at least one hundred fifty dollars.

### B. Sufficiency of the Evidence

■ Mr. Haslar also contends that the evidence was insufficient to convict him of burglary. He maintains that "because the jury rejected the evidentiary sufficiency of the stealing event by finding [him] not guilty," the jury "could not validly infer an intent to steal from the stealing event."

■ When considering whether the evidence is sufficient to support a criminal conviction, this court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the verdict, rejecting all contrary evidence and inferences. *Purlee*, 839 S.W.2d at 587. This court neither reweighs the evidence nor determines the reliability of that evidence or the credibility of witnesses. *State v. Neal*, 849 S.W.2d 250, 253 (Mo.App.1993). Rather, an appellate court's "review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Purlee*, 839 S.W.2d at 587.

■ In order to establish that Mr. Haslar committed the crime of second-degree burglary, the State was required to show that he (1) knowingly and unlawfully entered or remained in a building or inhabitable structure and (2) that he did so for the purpose of committing a crime within the premises.

Section 569.170. The intent to steal may be shown by unlawful entry into a building containing items of value. *State v. Jenkins,* 741 S.W.2d 767, 768 (Mo.App.1987).

In the case at bar, the State presented evidence that on July 9, 1992, Mr. Haslar entered Ms. Lynch's duplex without her permission and remained inside the duplex for two to three minutes. The State further established that Mr. Haslar gained entry into the duplex by forcibly kicking in the back door of the building and did so while Ms. Lynch and her daughter were not at home. When Mr. Haslar left Ms. Lynch's duplex he was carrying a small, square object. Taking this evidence and all logical inferences that can be drawn from it in the light most favorable to the verdict, this court finds that a reasonable jury could have determined that the evidence was sufficient to find both that Mr. Haslar knowingly and unlawfully entered Ms. Lynch's duplex and that he did so with the specific intent of committing the crime of stealing while in the duplex.

The trial court did not err in denying Mr. Haslar's post-trial motion for judgment of acquittal. Point one is denied.

## II.

■ For his second point on appeal, Mr. Haslar contends that the trial court erred when it refused to instruct the jury on trespass in the first degree, a lesser included offense of burglary in the second degree.[2] Mr. Haslar argues that the trial court was required to provide an instruction on trespass in the first degree because it is possible to infer from the evidence that he entered the premises for a purpose other than to steal, such that the evidence provided a basis for both an acquittal on the burglary charge and a conviction of trespass in the first degree.

■ The trial court is required to submit to the jury a lesser included offense instruction if the evidence shows the lack of an essential element of the greater offense, thereby providing a basis for a verdict acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Blewett,* 853 S.W.2d 455, 457 (Mo.App.1993); § 556.046.2. The "basis," though, must be more than mere possibility and speculation. *Blewett,* 853 S.W.2d at 458; *State v. Green,* 812 S.W.2d 779, 787–88 (Mo.App.1991).

■ An essential element of burglary is the intent to commit a crime. *Id.* at 788. Thus, in a case involving a charge of burglary, the trial court is required to instruct on trespass in the first degree only if the evidence reveals an absence on the defendant's part of an intent to commit a crime. *See id.* When the State has shown the intent to steal and there is no ambiguity in the defendant's purpose for being in the premises of another, there is no basis for providing the jury with an instruction on trespass in the first degree. *Id.; Jenkins,* 741 S.W.2d at 769.

As this court concluded in point one of this appeal, the evidence was sufficient to find that Mr. Haslar entered Ms. Lynch's duplex with the specific intent of committing the crime of stealing while in the duplex. *See supra* Point I. Mr. Haslar, though, argues that the jury could have inferred that he had a different purpose in entering the duplex based upon the following exchange between his attorney and Ms. Lynch:

Q. Did [Mr. Haslar] have any clothes over at your place July 9th, any at all?

A. It's possible he could have, possibly dirty or something, because he didn't have a washing machine.

Q. So he'd bring clothes over there, and you'd do his laundry, wouldn't you?

A. I did a few things for him, yeah.

Q. Best of your knowledge, he really truly had some clothes in there at the time on July 9th, 1992, of some kind?

A. He might have had some, yeah.

Q. Do you recall when the last time prior to July 9th that he was over at your premises?

A. Well, it would have been before he assaulted me the last time.

Q. Well—

---

2. Both parties are in agreement that trespass in the first degree is a lesser included offense of burglary in the second degree. *See State v. Green,* 812 S.W.2d 779, 787 (Mo.App.1991).

A. Three, four weeks.

Q. You think that you had this dirty laundry for three or four weeks, and it just stayed there; is that right?

A. Yeah.

Q. But was it there?

A. As far as I know. I—you know, I can't remember if everything was there or not, but I remember I was in the hospital for a week prior to this due to him.

Mr. Haslar claims that from this testimony the jury could have inferred that he forcibly entered Ms. Lynch's home to retrieve clothing he had left there. Ms. Lynch's testimony, however, only establishes that Mr. Haslar *may* have had some clothing at her duplex on July 9, 1993. Nothing Ms. Lynch said supports Mr. Haslar's contention that "his purpose could have involved the locating and/or retrieval of personal property." Indeed, Mr. Haslar failed to present any evidence at all to sustain his claimed purpose for being in Ms. Lynch's duplex.

Mr. Haslar's alleged "basis" for submitting a jury instruction on the lesser included offense of trespass in the first degree is no more than "mere possibility and speculation." *Green,* 812 S.W.2d at 787–88. Mr. Haslar's citation to *State v. Moore,* 729 S.W.2d 239 (Mo.App.1987), does not advance his cause. In *Moore,* the court of appeals found that the inference of the intent to steal supported by the defendant's unlawful entry into the house of another was not compelling under the following circumstances:

> There was no forcible entry and nothing in the house was disturbed. There was evidence that defendant's car had sustained trouble, that he went to [the victim's] home and knocked on the door and that he then entered the house. It is possible to infer that he entered to call for help or to advise someone of his delay.

*Id.* at 240. Unlike *Moore,* in the instant case, there is undisputed evidence of a forcible entry into Ms. Lynch's duplex. An eyewitness to the break-in testified that Mr. Haslar was the person who forcibly entered

the duplex. Ms. Lynch testified that after the break-in, she returned to her home to find the television screen broken, the telephone ripped out of the wall and the lid to the answering machine lying on the floor. Mr. Haslar left the duplex carrying a small, square object. Furthermore, there is insufficient evidence to support Mr. Haslar's contention that he entered the home for any reason other than to commit a crime.

The trial court did not err in refusing to instruct the jury on first-degree trespass. Point two is denied.

### III.

As his third point on appeal, Mr. Haslar contends that the trial court erred in sustaining the State's motion in limine regarding the admissibility of any evidence of Mr. Haslar's mental condition. Mr. Haslar argues that his past history of mental illness was relevant "as a circumstance bearing upon his mental condition at the time of the alleged offense" and his ability to form the intent required as an element of both burglary and stealing.

The trial court did not state its reasons for sustaining the State's motion in limine at the time it ruled on the motion. During the arguments of counsel presented in support of and in opposition to the motion, the trial court stated that Mr. Haslar's prior mental condition was irrelevant. This court need not decide whether Mr. Haslar's prior mental condition is relevant, though, because if the trial court's ruling on the admissibility of that evidence is sustainable under any theory, it will be upheld by the appellate court. *State v. Christian,* 847 S.W.2d 179, 181 (Mo.App. 1993), *aff'd on appeal after remand,* 865 S.W.2d 715 (Mo.App.1993). In this case, the trial court correctly sustained the State's motion in limine because Mr. Haslar failed to comply with § 552.030.[3]

> Section 552.030.2 provides:
>
> Evidence of mental disease or defect excluding responsibility shall not be admissible at trial of the accused unless the ac-

---

**3.** Section 552.030 was amended, effective August 28, 1993, but the relevant provisions were unchanged.

cused, at the time of entering his plea to the charge, pleads not guilty by reason of mental disease or defect excluding responsibility, or unless within ten days after a plea of not guilty, or at such later date as the court may for good cause permit, he files a written notice of his purpose to rely on such defense.

Mr. Haslar did not plead not guilty by reason of a mental disease or defect at the time he entered his plea to the charges of burglary in the second degree and stealing. At no time did Mr. Haslar offer any kind of written notice that he intended to rely on the defense of not guilty by reason of a mental disease or defect. Nor did he make any attempt to present evidence of good cause.

Mr. Haslar argues that the State was aware of Mr. Haslar's intention to rely upon the defense of mental defect because he made an oral motion for a mental examination at arraignment and the State filed the motion in limine after the mental examination of Mr. Haslar was completed. However, the mere fact that Mr. Haslar orally requested a mental examination did not notify the State that he intended to rely at trial on the defense of not guilty by reason of a mental disease or defect. This is especially true since the exam revealed that Mr. Haslar did not have a mental disease or defect either at the time of the exam or at the time of the offense.

■ Even if the State had been put "on notice" that Mr. Haslar intended to rely on the defense of mental disease or defect, Mr. Haslar still has not complied with the statutory requirements. *State v. Crowley*, 571 S.W.2d 460, 463 (Mo.App.1978). If a criminal defendant wants to expunge himself or herself of criminal responsibility by reason of mental disease or defect, the defendant is obliged to comply with the procedural requirements of § 552.030.2. *Bannister v. State*, 726 S.W.2d 821, 828 (Mo.App.1987), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987) (citing *State v. Strubberg*, 616 S.W.2d 809, 816 (Mo. banc 1981)). Mr. Haslar failed to enter a plea of not guilty by reason of mental disease or defect at his arraignment, failed to file a written notice of his purpose to rely on such defense, and did not establish good cause for his late request to be permitted to raise the defense in a timely manner, all as required by § 552.030.2. Therefore, the trial court did not abuse its discretion in sustaining the State's motion in limine.

■ Mr. Haslar·also argues that the State improperly commented upon his mental competency. During closing argument, the assistant prosecuting attorney made the following statement to the jury:

> Ladies and gentlemen, [Mr. Haslar] may be in a wheelchair now. He wasn't in a wheelchair. He was a vibrant, active adult that knew what he was doing. You can't take into consideration the fact that he may be in a wheelchair now. You can take into consideration what he was able to do at that time.

Mr. Haslar alleges that it was improper for the State to argue that he "knew what he was doing" at the time of the offense since he was not allowed to present a defense of mental disease or defect.

■ The trial court is given broad discretion to control closing argument. *State v. Martin*, 852 S.W.2d 844, 853 (Mo.App. 1992). Attorneys are allowed wide latitude in making closing argument, such that "counsel may state opinions or conclusions that fairly draw from the evidence, and counsel may draw any inference from the evidence that [counsel] believes is justified in good faith." *Id.* Trial courts commit no error by permitting the State to review admissible evidence in argument before the jury after the evidence is in the record. *State v. Knighton*, 518 S.W.2d 674, 680 (Mo.App. 1975). In ruling on the propriety of comments made during closing argument, courts must interpret the challenged comments in the context of the entire record rather than in isolation. *State v. Blakeburn*, 859 S.W.2d 170, 174 (Mo.App.1993).

Between the time of the offense and the trial, Mr. Haslar suffered an illness which necessitated his use of a wheelchair. The assistant prosecutor's comments were made after Mr. Haslar's attorney asked the jury during closing argument, "The point is, did this man seated in the wheelchair commit

these acts?" Viewed in context, the State's closing argument appears to be more a comment on Mr. Haslar's physical condition at the time of the accident than on his mental ability. However, even if the comments could be construed as relating to Mr. Haslar's mental state, the comments would not be improper in this case, where Mr. Haslar did not properly assert a defense of not guilty by reason of a mental disease or defect, leaving only the presumption that Mr. Haslar was mentally competent at the time of the offense. Section 552.030.6. Thus, the trial court did not abuse its discretion in allowing the prosecuting attorney's comments. Point three is denied.

The judgment of the trial court is affirmed.

All concur.